1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9   UNITED STATES OF AMERICA,                Case No. 13cv53 BTM(BLM)

10                              Plaintiff,    **ORDER DENYING MOTION TO**
                                              **INTERVENE**
11            v.

12   DON L. BALLANTYNE, et al.,

13                              Defendants.

14
15        The Agape Way, LLC ("Agape") has filed a motion to intervene in this
16   action.  For the reasons discussed below, the Court **DENIES** without prejudice
17   the motion to intervene.

18
                            **I.  FACTUAL BACKGROUND**
19
20        This action is a suit brought by the United States to foreclose federal tax
21   liens against two parcels of property – the "McCall" and "Fourth" properties[1] –
22   that this Court previously determined to be property of Don and Susanne
23   Ballantyne ("the Ballantynes"), to which the United States' tax liens attach.  See
24   Leeds, LP v. United States, Case No. 08cv100 BTM(BLM); Fourth Inv. LP v.
25   United States, Case No. 08cv110 BTM(BLM); Fourth Inv. LP v. United States,
26   720 F.3d 1058 (9th Cir. 2013) (affirming this Court's judgment in favor of the

27   _____

28       [1]  The "McCall" property is residential property located at 3207 McCall Street, San
Diego, California, 92106.  The "Fourth" property is commercial property located at 1280
Fourth Avenue, San Diego, California, 92101.

1   United States).

2        The United States seeks a decree of sale to enforce its tax liens, an order
3   adjudging that purported deeds of trust encumbering the McCall and Fourth
4   properties are fraudulent and that the transfers are null and void, and a
5   determination by the Court regarding the validity and priority of all liens on and
6   other interests in the McCall and Fourth properties.

7        Agape's interest in this action relates to the deeds of trust on the
8   properties.  At some point in time, Susanne C. Ballantyne executed two deeds
9   of trust, purporting to encumber the McCall and Fourth properties in favor of
10  Eastman Investment ("Eastman").  (FAC, ¶ 60.)  Susanne Ballantyne owned a
11  majority interest in Eastman.  (FAC ¶ 62)  The deeds of trust, which were dated
12  November 1, 1991, but were not notarized until May 1995, were allegedly given
13  in connection with a loan in November 1991 from Eastman to Susanne C.
14  Ballantyne Trust.  (Id.)  The United States contends that no loan was actually
15  given from Eastman to Susan C. Ballantyne Trust.  (FAC ¶ 61.)  Instead,
16  purported loan dispersals were made to a third party, Lark Investments, and for
17  at least one year, Lark Investments repaid the loan to Eastman.  (Id.)

18       New Horizon, L.C. ("New Horizon") claims that it purchased the notes and
19  deeds of trust from Eastman.  (Doc. No. 47 at 1:6-11.)  Eastman retained a
20  collateral interest in the notes and deeds of trust to secure New Horizon's
21  obligation to pay Eastman the balance of the purchase price for the
22  instruments.  (Id.)  The United States contends that the assignment to New
23  Horizon, an entity managed by Susanne Ballantyne and her daughter, was a
24  sham and that New Horizon did not actually provide proper consideration for
25  the notes and deeds of trust.  (Proposed Second Amended Complaint, ¶¶ 75-
26  83.)

27       According to Agape, Eastman is a general partnership whose partners
28  are Cramer Investment Company ("CIC"), a California general partnership, and

1  Investment Associates, L.P. ("IALP").  (Decl. of "Ted" Edward R. Cramer, ¶ 5.)

2  CIC holds an 80% interest in Eastman, and IALP holds a 20% interest in

3  Eastman.  (Id. at ¶ 7.)   CIC's partners are Agape and IALP, each of which

4  holds a 50% interest in CIC.  (Id. at ¶ 5.)

5      Agape received its partnership interest in CIC from Edward T. Cramer,

6  Susanne Ballantyne's brother.  (Id. at ¶ 9;  FAC ¶ 62.)  Agape's managers are

7  Dianne W. Cramer (Edward Cramer's wife) and Ted Cramer (Edward Cramer's

8  son), and its sole member is Remarc Capital, LLC, which is also managed by

9  Dianne Cramer and Ted Cramer and has as members Dianne Cramer, the

10  children of Edward Cramer and Dianne Cramer, and trusts for their benefit.  (Id.

11  at ¶¶ 10-11.)

12      IALP received its partnership interests in Eastman and CIC from Susanne

13  Ballantyne and the Susanne C. Ballantyne Trust.  (Id. at ¶ 9.)  According to

14  Agape, IALP is held and controlled by Clark Ballantyne and Laura Ballantyne,

15  the children of Susanne and Don Ballanytne, through trusts for their benefit.

16  (Id. at ¶ 6.)   IALP's general partner is Freemont corporation, a Nevada

17  corporation controlled by the Ballantyne children.  (Id. at ¶ 6.)

18

19                          **II.  DISCUSSION**

20      Agape moves to intervene as a defendant in this action.  Agape seeks to

21  intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a), or in the

22  alternative, by permission of the Court pursuant to Fed. R. Civ. P. 24(b).  As

23  discussed below, the Court finds that Agape is not entitled to intervene as a

24  matter of right and that permissive intervention is not warranted.

25

26  A.  Intervention as of Right

27      The Court must permit anyone to intervene who "claims an interest

28  relating to the property or transaction that is the subject of the action, and is so

situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

The Ninth Circuit requires that an applicant for intervention as of right demonstrate that:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir.2004) (quoting United States v. City of Los Angeles, 288 F.3d 391, 397 (9th Cir.2002)).

To demonstrate a "significant protectable interest," an applicant "must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." Citizens for Balanced Use v. Montana Wilderness Ass'n, 647 F.3d 893, 897 (9th Cir. 2011). Agape arguably has a significant protectable interest relating to the property that is the subject of the action because it has a 40% interest in Eastman, which allegedly has a security interest in the deeds of trust on the McCall and Fourth properties.

Furthermore, the disposition of this action may impair or impede Agape's ability to protect its interest because the United States asks the Court to adjudge the deeds of trust void due to fraudulent transfers. If the Court grants this relief, Agape will have no remaining interest in the properties.

As for the third factor, Agape's motion to intervene is timely because this litigation is in the pleading stage.

Therefore, the pivotal inquiry is whether existing parties adequately represent Agape's interest. In determining adequacy of representation, courts consider the following three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments;

4                                                    13cv53 BTM(BLM)

(2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. <u>Arakaki v. Cayetano</u>, 324 F.3d 1078, 1086 (9th Cir. 2003).

The most important factor in evaluating the adequacy of representation is how the proposed intervenor's interest compares with the interests of existing parties. <u>Id.</u> There is a presumption of adequacy of representation when an applicant for intervention and an existing party have the same ultimate objective. <u>Id.</u> If the proposed intervenor's interest is identical to that of an existing party, "a compelling showing should be required to demonstrate inadequate representation." <u>Id.</u> Where parties share the same ultimate objective in the litigation, "differences in litigation strategy do not normally justify intervention." <u>Id.</u>

Adequacy of representation will be presumed adequate in cases where a corporation, a labor union, or some other group speaks for its members. Wright, Miller & Kane, <u>Federal Practice and Procedure</u>: Civil 3d §1909. Thus, absent a showing of inadequate representation by a corporation or partnership that is already party to a suit, courts ordinarily will not allow shareholders or partners to intervene as a matter of right. <u>See, e.g.</u>, <u>Stadin v. Union Elec. Co.</u>, 309 F.2d 912 (8th Cir. 1962) (denying motion to intervene brought by minority stockholder); <u>Metro North State Bank v. Amcore Bank Nat'l Ass'n</u>, 1990 WL 304269 (N.D. Ill. Nov. 20, 1990) (denying motion of limited partners to intervene in foreclosure action.)

Here, Eastman speaks for its partners CIC and IALP. Agape is one more step removed because it is not a partner of Eastman, but rather, is a partner of CIC. At any rate, it is presumed that Eastman's representation of its partners (and partners' partners) is adequate. The Court also presumes that Eastman's and Agape's ultimate objective in this litigation is the same – that is, to

1  establish that the deeds of trust were valid and protect Eastman's interest in
2  the properties.

3      Agape attempts to distinguish its interest from that of Eastman.  Agape
4  argues that  ultimately, Eastman's partnership interests are controlled by two
5  separate families - the Ballantyne Family and the Cramer Family.   Agape
6  contends that the Cramer Family takes no position regarding the Ballantyne
7  Tax litigation or the United States' fraudulent conveyance claims, but, rather,
8  only seeks to protect its own interests in Eastman.  (Reply at 7:20-22.)  Agape
9  explains, "Agape's only interest is in making sure that the tax liens do not
10  negatively affect the value of Agape's separate and distinct partnership
11  interests in CIC and Eastman."  (Reply at 6:15-17.)

12      However, as far as the Court can tell, the only way that Agape's interest
13  in the properties will not be negatively affected is if Eastman prevails on the
14  fraudulent transfer claims.  If the United States prevails, the remedy it seeks is
15  avoidance of the transfers *in their entirety*, not just as they pertain to the
16  Ballantynes.  The deeds of trust were originally conveyed to Eastman, not IALP
17  or the Ballantynes, and it was Eastman that assigned the deeds of trust to New
18  Horizon.   Agape has not cited any law establishing that its interests in the
19  deeds of trust are somehow severable from those of Eastman and/or the
20  Ballantyne family, allowing Agape to assert a defense insulating the Cramers'
21  interest in the properties from that of the Ballantynes.  Agape may be able to
22  assert a claim of breach of fiduciary duty or other claim against IALP to recover
23  damages springing from any fraudulent conduct of IALP or the Ballantynes, but
24  this action only concerns the validity of the deeds of trusts and what priority, if
25  any, they have over other interests in the McCall and Fourth properties.

26      Absent a severable interest in the deeds of trust, Agape's objective in this
27  litigation is the same as Eastman's - to defend the validity of the deeds of trust
28  and protect Eastman's interest in the properties.  Eastman has appeared in this

litigation and has filed a motion to dismiss the FAC.  There is no evidence at this time that Eastman will not vigorously defend this lawsuit.  Furthermore, Agape has not identified any valid defense that Eastman would be unwilling to assert.  Agape's inability to identify a defense different than those of Eastman is underscored by Agape's failure to file a proposed amended answer as required by Fed. R. Civ. P. 24(c).

Agape suggests that Eastman cannot adequately represent its interests because Agape has commenced state court proceedings to dissolve Eastman and CIC.   However, IALP is opposing Agape's efforts to dissolve the entities, and the proceedings are ongoing.  (New Horizon RJN, Ex. 1.)  Furthermore, even if Eastman were to be dissolved, Eastman would remain viable for purposes of wrapping up its business, including this litigation.  See Cal. Corp. Code § 16802(a) ("[A] partnership continues after dissolution only for the purpose of winding up its business.  The partnership is terminated when the winding up of its business is completed.").

Because Agape has not made a "compelling showing" rebutting the presumption that Eastman will adequately represent its interests in this action, Agape is not entitled to intervene as a matter of right.

B. Permissive Intervention

Agape also seeks permissive intervention under Fed. R. Civ. P. 24(b). The Court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Courts may also consider a number of other factors in determining whether to permit permissive intervention, including:

the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

Spangler v. Pasadena Bd. of Educ., 552 F.2d 1326, 1329 (9th Cir.1977) (footnotes omitted).

Although Agape has a defense that shares with the main action a common question of law or fact since its interest in the litigation is identical to that of Eastman, the Court is not convinced that permissive intervention is warranted.  Agape – a partner in CIC, which is a partner in Eastman, which purportedly holds a security interest in the deeds of trust – has an indirect interest in the McCall and Fourth properties.  Furthermore, as already discussed, it is presumed that Eastman will adequately represent the partnership's interests with respect to the deeds of trust.

In addition, the Court tends to agree with New Horizon and the United States that Agape's participation in this action would unduly complicate the issues in this litigation and potentially prolong the lawsuit.  The Court suspects that Agape would attempt to shift the focus of the litigation to the inter-family squabble.  The parties would become immersed in discovery regarding the family feud and the issues in this case would be overshadowed by contentious disputes between the Cramers and Ballantynes.  Accordingly, the Court, in the exercise of its discretion, denies Agape's motion for permissive intervention.

The Court's denial of Agape's motion for intervention as of right and motion for permissive intervention is without prejudice.  If circumstances change such that Agape can establish that intervention is warranted (due to a conflict of interest or otherwise), Agape may file a new motion.

13cv53 BTM(BLM)

### III.  CONCLUSION

For the reasons discussed above, Agape Way's motion to intervene is **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

DATED:  September 3, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court

13cv53 BTM(BLM)